UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HORACE TOLLIVER,

       Plaintiff,

v.                              Case No. 8:20-cv-00258-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

       Defendant.

_____/

**ORDER**

      Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.**    **Procedural Background**

      Plaintiff filed an application for DIB on November 13, 2014, alleging disability beginning on January 8, 2015 (Tr. 19).  The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 120-32, 134-49).  Plaintiff then requested an administrative hearing (Tr. 165-66).  Per Plaintiff's request, the ALJ held a hearing where Plaintiff appeared and testified (Tr. 40-87).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied

Plaintiff's claims for benefits (Tr. 16-32).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 4-6).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1975, claimed disability beginning on January 8, 2015 (Tr. 19, 30).  Plaintiff obtained a high school education (Tr. 30).  Plaintiff's past relevant work experience included work as a general ledger accountant (DOT No. 210.382-045), auditor (DOT No. 160.67-154), data entry clerk (DOT No. 2013.582-057), and accountant (DOT No. 160.162-018) (Tr. 30).  Plaintiff alleged disability due to carpal tunnel syndrome ("CTS"), cubital and radial tunnel syndrome, anxiety and panic disorder, OCD, MDD, severe muscle spasms, and insomnia (Tr. 220).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through June 30, 2020 and had not engaged in substantial gainful activity since January 8, 2015, the alleged onset date (Tr. 21). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: right acromioclavicular joint arthritis and strain; CTS; radial tunnel syndrome; cubital tunnel syndrome; degenerative disc disease; hypertension; major depressive disorder; and generalized anxiety disorder (Tr. 22).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments

that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations:

> "Function by function, the claimant remains able to lift and or carry 20 pounds occasionally and 10 pounds frequently, stand and or walk 6 hours in a workday, and sit 6 hours in a workday. He can push and or pull as much as he can lift and or carry. He can frequently reach in all directions including overhead with the right upper extremity and frequently handle, finger, and feel with the bilateral hands. He can occasionally climb ladders, ropes, and scaffolds and frequently climb ramps, and stairs, balance, and crawl. He can frequently work at unprotected heights and moving mechanical parts. He can understand, remember, and carry out simple, repetitive, and routine tasks; occasionally interact with the general public, coworkers, and supervisors; occasionally deal with changes in the work setting; make simple work related decisions; and maintain attention, concentration, persistence, or pace in 2 hour increments throughout an 8 hour workday with normal breaks."

(Tr. 24). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 24).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 30). Given Plaintiff's background and RFC, the VE testified that other jobs exist in significant numbers in the national economy that Plaintiff can

perform, such as housekeeper (DOT No. 323.687-014), advertisement material handler (DOT No. 230.687-010), and carwash attendant (DOT No. 915.667-010) (Tr. 31). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled and found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 28-29).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence,

the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (citation omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

## III.

Plaintiff argues that the ALJ erred by not considering all of Plaintiff's limitations in making Plaintiff's RFC determination and by not giving proper weight to the medical opinions on record. Moreover, Plaintiff argues that the ALJ did not properly consider Plaintiff's subjective symptoms. For the following reasons, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### 1. The ALJ's RFC determination is supported by substantial evidence

Plaintiff first contends that the ALJ's RFC determination is not supported by substantial evidence. The ALJ found that Plaintiff's carpal and cubital tunnel

syndrome caused limitations but did not prevent Plaintiff from performing light work with frequent reaching in all directions with the right upper extremity and frequent handling, finger, and feeling bilaterally (Tr. 24, 30).  In contrast, Plaintiff contends that his long history of ulnar neuropathy and CTS fail to support that he could frequently use his hands for reaching, handling, and fingering.   For the following reasons, the ALJ's decision is supported by substantial evidence in the record.

RFC is defined as the most Plaintiff can still do despite his limitations and is based on an evaluation of all the relevant evidence in the record.  *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1) and (a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184.  At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC.  *See* 20 C.F.R. §§ 404.1546(c); *see also* 20 C.F.R. §§ 404.1527(d)(2) (stating that the assessment of a claimant's RFC is an issue reserved for the Commissioner).  The task of determining a claimant's RFC and ability to work thus rests with the ALJ, not a medical source.  *See Moore v. Soc. Sec. Admin., Com'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("Contrary to the district court's reasoning, the ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC … Indeed, the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC"); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that

the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors").

Here, the ALJ recognized that Plaintiff's carpal and cubital tunnel syndrome caused limitations but nonetheless, that Plaintiff could frequently use his hands for reaching, handling, and fingering (Tr. 24, 30).   The ALJ noted that nerve conduction studies revealed bilateral median and ulnar nerve neuropathy, and that Plaintiff exhibited tenderness and positive Phalen's and Tinel's signs in the upper extremities (Tr. 25-26, 448, 450, 452, 456, 458, 464, 475, 508, 530, 628, 697). At times he exhibited some abnormalities in sensation (Tr. 464, 501 508, 698), but just as often, he demonstrated no sensory deficits (Tr. 445, 448, 454, 456, 458).  Despite these abnormalities, the record indicates that Plaintiff exhibited normal strength and no motor deficits in the upper extremities (Tr. 390, 445, 447, 450, 454, 456, 458, 508, 698).

Plaintiff repeatedly points to his diagnoses to argue that he can't perform light work, however, the evidence supports a finding that the functional effects of such diagnoses indicate that he is capable of working and not disabled. "[T]he mere existence of [a claimant's] impairments does not reveal the extent to which they limit [his] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).  Rather, an ALJ will consider the limiting effects of a claimant's impairments in determining the RFC. *See* 20 C.F.R. § 404.1545(e); *see also McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (holding the severity of a medically ascertained disability must be

measured in terms of its limiting effects and not simply in terms of "deviation from purely medical standards of bodily perfection or normality").

In determining Plaintiff's RFC, the ALJ also noted that Plaintiff's symptoms improved with medication and that Plaintiff relied exclusively on conservative remedies (Tr. 26-27). A "medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). Moreover, an ALJ may properly consider a claimant's course of conservative treatment as evidence that contradicts a claimant's subjective complaint of disabling symptoms. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). Here, the record indicates that Plaintiff has not taken readily available steps to increase his likelihood of improvement. Plaintiff refused to undergo surgery because "he is concerned about complications" (Tr. 439). Plaintiff also implied that he didn't trust doctors to perform surgery on him, stating that the medical care he has received "has been incompetent" and that the doctors will "make an error" and "cover it up" (Tr. 69). Plaintiff expressed concern that a doctor performing carpal tunnel or cubital tunnel surgery would not present qualifications or evidence of any successful surgeries that they have done (Tr. 71). Plaintiff also expressed concern that a doctor couldn't offer a warranty like when purchasing a tangible product (Tr. 71). More significantly, Plaintiff also admitted to not using his carpal tunnel braces on a regular basis despite being instructed to wear them (Tr. 446-47, 452). Plaintiff's refusal to do something as simple as wear his braces indicates that his condition may not be as severe as he contends. The record also indicates that Plaintiff

attended two physical therapy sessions and experienced success but then stopped attending after the third session because "he began to flare up" (Tr. 481).

Despite Plaintiff's lack of effort to improve his condition, Plaintiff's progress notes do indicate that his CTS improved with medication (Tr. 543-70). Plaintiff frequently reported that he experienced pain in the wrists/hands/fingers and elbow regions averaged only 3/10 on a scale of 1 to 10, with 10 being the greatest pain (Tr. 451, 457). Moreover, Plaintiff stated that "when he has to lift groceries or move furniture he is fine, but when he is doing the same thing over and over again is when the pain is the worst" (Tr. 481). As discussed more in the paragraphs that follow, the RFC in this case accounts for this and limits Plaintiff from doing repetitive tasks. Thus, substantial evidence in the record supports the ALJ's determination.

## 2. Medical Opinions

Plaintiff contends that the ALJ did not properly consider the opinion evidence related to Plaintiff's physical impairments. Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairments, and physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security

regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence.  *See* 20 C.F.R. §§ 404.1527, 416.927.

In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c).  For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive.  20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive.  20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted).  Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*).  A reviewing court will not second guess an ALJ's decision regarding the weight to afford a medical opinion, however, so long as the ALJ articulates a

specific justification for the decision.  *See Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Additionally, statements by a medical source that a claimant is "disabled" or "unable to work" constitute opinions on issues reserved to the Commissioner and do not direct that a finding of disabled is warranted.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013) (stating that it is the Commissioner, not a claimant's physician, who determines whether a claimant is statutorily disabled, and a statement by a medical source that a claimant is disabled does not mean that the Commissioner will conclude a claimant is disabled).  The Commissioner need not afford any special significance to the source of such an opinion because the determination of disability and ability to work remain issues reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

Here, Plaintiff challenges the ALJ's evaluation of multiple medical sources' opinions.  Specifically, Plaintiff argues that the ALJ erred in affording significant weight to the opinion of State agency medical consultant Hemantha Surath, M.D. ("Dr. Surath") while providing little weight to the opinion of independent medical examiner Dr. John W. Ellis ("Dr. Ellis") (Tr. 23, 26-27).  For the reasons that follow, substantial evidence supports the ALJ's decision.

**(a) Dr. Surath**

Plaintiff argues that the ALJ erred in giving great weight to the opinion of Dr. Surath, a State agency medical consultant (Tr. 25, 37-60).  State agency medical

consultants are considered experts in the Social Security disability evaluation process, 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(I), and in appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. SSR 96-6p, 1996 WL 374180, at *2-3 (S.S.A. July 2, 1996) *see Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-03 (11th Cir. 2012) (holding the ALJ properly gave significant weight to the opinion of the non-examining physician because it was consistent with the record evidence).

Here, the ALJ accorded significant weight to Dr. Surath's assessment of Plaintiff (Tr. 26).  The ALJ noted that Dr. Surath is a licensed physician familiar with the Social Security Regulation's evidentiary requirements and provided a detailed and persuasive rational in support of his opinion (Tr. 26).  After review of the record in September 2016, Dr. Surath opined that Plaintiff remains able to perform light level exertion with some manipulative, postural, and environmental limitations (Tr. 26).  Importantly, the ALJ found that Dr. Surath's opinion that Plaintiff could perform light work with limited reaching with the right upper extremity and limited handling, finger, and feeling bilaterally was consistent with the evidence of record (Tr. 26, 144).  Moreover, in determining that Plaintiff is not disabled and remains able to perform a wide range of light level exertion, the ALJ relied on evidence in the record other than just the opinion of Dr. Surath.

The ALJ found Dr. Surath's opinion consistent with Dr. Kelly's assessment, Dr. Kushner's assessment, and Plaintiff's own testimony (Tr. 412-21, 430-31, 439-58, 461-65), and that other evidence does not support greater limits (Tr. 26).  Those records support a finding that Plaintiff, despite his limitations, is able to perform light work.  Therefore, the ALJ did not err by providing great weight to the opinion of the non-examining physician in this case.  *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (noting that the ALJ did not err in relying on the reports of non-examining physicians where the opinions did not otherwise contradict the other evidence of record).

Additionally, Plaintiff argues that Dr. Surath rendered his opinion based upon incomplete evidence.  However, as correctly cited by Defendant, this is not error.  While Dr. Surath may not have reviewed all of the evidence, the ALJ did (Tr. 19-31); *See*  20 C.F.R. § 404.1527(c)(3), (4); *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 669 (11th Cir. 2015) (holding that the ALJ properly granted weight to the opinions of medical experts even though the experts did not review the most recent medical records).  Even if the state agency medical consultant cannot review all of the claimant's medical records before rendering an opinion or offering a RFC assessment, the ALJ has access to the entire record, including the claimant's testimony, and can determine whether the opinion is supported by and consistent with the evidence of record and thus, whether to afford the opinion great weight. *See* 20 C.F.R. § 404.1527(c)(3), (4); *see also Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not afford undue weight to a non-

examining doctor where the doctor cited several portions of the record in support of her conclusions, and the ALJ, who makes the ultimate determination, had access to the entire record, including the claimant's testimony).

Here, Dr. Surath offered his opinion in September 2016 (Tr. 144-45). The only physician who saw Plaintiff specifically for his CTS after this date was Dr. Morrell, who evaluated Plaintiff on November 9, 2016, November 29, 2016, and February 1, 2017 (Tr. 501-11). As the ALJ stated, Dr. Morrell's notes showed intact neurovascular functioning in the elbows and largely intact neurovascular functioning in the wrists, which does not contradict Dr. Surath's opinion (Tr. 26, 501-09). Plaintiff did see Dr. Ellis after September 2016, however, the ALJ gave Dr. Ellis's opinion little weight for the reasons discussed in the ALJ's decision and in the next section of this Order (Tr. 26-27). As such, the ALJ considered the full record in determining that Plaintiff could perform frequent, as opposed to constant, reaching, handling, fingering, and feeling, and did not unduly rely on Dr. Surath's opinion (Tr. 26).

### (b) Dr. Ellis

Plaintiff next contends that the ALJ erred in not giving substantial weight to Dr. Ellis' medical opinion. Dr. Ellis conducted an independent medical examination of Plaintiff in October of 2017 (Tr. 696-707, 708-20). The Eleventh Circuit has noted that the opinion of a one-time examiner is not entitled to any special deference or consideration. *See McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because

they are not treating physicians); *see also* Denomme v. Comm'r, Soc. Sec. Admin., 518 F. App'x 875, 877 (11th Cir. 2013) (holding ALJ does not have to defer to opinion of doctor who conducted single examination and who was not treating source).  Further, an ALJ may reject *any* medical opinion if the evidence supports a contrary finding. *See Williams v. Comm'r, Soc. Sec.*, 580 F. App'x 732, 734 (11th Cir. 2014) (citing *Sryrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). However, the ALJ must articulate the weight given to medical opinions and the reasons for that weight. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

The ALJ gave little weight to the opinion of Dr. Ellis, a one-time examiner, because "the assessment starkly contrasts with other medical opinions from Drs. Morell and Surath placing [Plaintiff] at light duty and the assessment is not supported by the clinical and objective findings contained in his report" (Tr. 27). Dr. Ellis opined that Plaintiff could lift up to 50 pounds occasionally, sit for 8 hours in an 8-hour workday, and stand and/or walk for 8 hours in an 8-hour workday (Tr. 26, 716-19).  Despite this, he assessed marked limits in Plaintiff's abilities to grasp, turn and twist items, marked limits in Plaintiff's ability to use his fingers and hands for fine manipulation, and marked limits in Plaintiff's ability to use his right arm for reaching overhead (Tr. 26, 716-19).

The ALJ found Dr. Ellis' opinion inconsistent with Dr. Ellis' own observation that Plaintiff had normal grip strength (Tr. 27).  Dr. Ellis' opinion also contradicts other evidence of record showing intact motor function (Tr. 390, 445, 447, 450, 454, 456, 458, 508, 698).  As additional reasons for discounting Dr. Ellis'

opinion, the ALJ noted that Plaintiff underwent no more than conservative treatment and admitted that he was not using his braces as instructed, as discussed *supra* (Tr. 27).

Lastly, Plaintiff argues that the ALJ's rejection of Dr. Ellis' opinion was improper because the ALJ noted that the independent medical examination was undertaken in an "effort to generate evidence" and that "the doctor was presumably paid for the report" (Tr. 27). Plaintiff is correct that the weight given to a medical report by a consultative physician does not depend on who retained the physician. *Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 987 (11th Cir. 2013). Plaintiff is also correct that "generating evidence is the purpose of obtaining opinions from medical sources, whether paid for by the Commissioner or by the claimant" and not a valid basis for rejecting a medical opinion. *Roundtree v. Saul*, 8:18-cv-1524-T-SPF, 2019 WL 4668174, at *4 (M.D. Fla. Sept. 25, 2019) citing *Hickel*, 539 F. App'x at 987. However, the ALJ appears to have acknowledged these requirements and stated that "such evidence is certainly legitimate and deserves due consideration" while noting that "the context in which [the evidence] was produced cannot be entirely ignored" (Tr. 27). It does not appear that the ALJ actually discounted Dr. Ellis' opinion for any of these reasons. Notwithstanding this, the undersigned finds that any such error by the ALJ in this instance is harmless because as discussed, the ALJ cited and outlined numerous other legitimate reasons for discounting the opinion of Dr. Ellis.

**(c) Dr. Morrell**

Plaintiff contends that the ALJ erred in not explaining what weight she afforded Dr. Morrell's opinion that Plaintiff be restricted to light duty non-repetitive work. Plaintiff also contends that Dr. Morrell's restriction contradicts the ALJ's RFC finding as to no repetitive work. Dr. Morrell first evaluated Plaintiff in November of 2016 and diagnosed Plaintiff with CTS and cubital tunnel syndrome (Tr. 26, 501-09). Dr. Morrell opined that Plaintiff injured both wrists and elbows due to repetitive computer use at his job and further opined that the injury is directly caused by aggravation and is most likely permanent (Tr. 501-09). Dr. Morrell stated that Plaintiff remains on light duty restrictions of non-repetitive work and allow for foot pedal control (Tr. 501-09). Dr. Morrell recommended continued splinting use, hand therapy for muscle strengthening and stretching, injections, and, as a last resort, carpal tunnel and cubital tunnel releases (Tr. 501-09).

Here, the ALJ's failure to assign weight to Dr. Morrell's opinion is harmless error because Dr. Morrell's opinion is not inconsistent with the RFC. Plaintiff appears to contend that Dr. Morrell's non-repetitive work restriction is inconsistent with the ALJ's RFC finding that Plaintiff can "frequently" handle, finger, and feel with his hands and "frequently" reach in all directions (Tr. 24). Although Dr. Morrell does not explicitly define the term "non-repetitive work," she had just explained that Plaintiff's wrist and elbow injuries were due to the repetitive motion of Plaintiff's computer use at work (Tr. 501-09). Therefore, it seems clear that Dr. Morrell intended for "non-repetitive work" to relate to Plaintiff's prior, repetitive

computer work (Tr. 501-09).  Therefore, "frequent" does not appear to mean "repetitive."  Since "frequent" work can still constitute "non-repetitive work," the ALJ's decision is consistent with Dr. Morrell's restrictions.

Further, the undersigned finds that the ALJ implicitly gave Dr. Morrell's opinion great weight because the ALJ relied on Dr. Morrell's opinion to support his finding that the record does not support greater limits than those set forth in the RFC (Tr. 26).  The restrictions provided for in the RFC are consistent with the restrictions set forth by Dr. Morrell, as the RFC restricts Plaintiff to only "frequently" handle, finger, and feel with his hands and only "frequently" reach in all directions (Tr. 24).  Therefore, substantial evidence supports the ALJ's evaluation of Dr. Morrell's opinion.

### 3.  Plaintiff's mental RFC

Plaintiff points out that the ALJ afforded significant weight to the opinions of State agency psychology consultants Donald Henson, Ph.D ("Dr. Henson") and Joseph Cools, Ph.D ("Dr. Cools") but argues that the ALJ incorrectly stated that the record does not support greater limitations.  Specifically, Plaintiff contends that the ALJ erred in failing to mention a 2016 loan discharge certification form completed for Plaintiff by Dr. Mahmood, a treating physician, and that this form supports greater limitations (Doc. 363).  While the undersigned agrees that the opinion of a treating physician must be afforded great weight unless good cause is shown to the contrary, the undersigned finds that any error on the part of the ALJ is harmless. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

First, Dr. Mahmood's opinions appear to be overall consistent with the RFC finding, which includes extensive limitations (Tr. 24, 396-410, 467-71, 570).  The RFC limitations are very fairly extreme and include only completing simple, repetitive, and routine tasks, only occasionally interacting with other people, only occasionally dealing with workplace setting changes, making only simple decisions, and maintaining attention, concentration, persistence or pace in only two-hour increments (Tr. 24).  As the ALJ notes, Plaintiff began visiting Dr. Mahmood in approximately January of 2014 (Tr. 28, 570).  Dr. Mahmood noted that Plaintiff was anxious, hypervigilant, and exhibited paranoid thinking consistent with his traumatic experiences in the past (Tr. 28, 549, 552, 553).  Dr. Mahmood noted that Plaintiff improved when on medication but worsened when, because of gastrointestinal issues, Plaintiff stopped taking Seroquel and Lexapro (Tr. 543).

When on medication, Plaintiff reported that the medications were "working okay" and that since being on the medications, he felt that he "discovered a completely different way of living that he was not aware of before, because he never knew that he could ever control his anxiety and now he does" (Tr. 560).  In one visit, Dr. Mahmood noted that one-on-one advice and counseling with Plaintiff provided good results (Tr. 545).  Some of Plaintiff's anxiety and stress appeared to be a result of his legal troubles (Tr. 543, 545, 547).  Specifically, Plaintiff was held in contempt of court and feared that he would end up in jail again (Tr. 543, 545, 547).  The legal troubles appear to possibly stem from an ex-wife's charge against Plaintiff for failure to pay child support (Tr. 547).

In the ALJ's decision, the ALJ thoroughly discussed Dr. Mahmood's findings except for a statement made by Dr. Mahmood in July of 2016 (Tr. 28-29, 363).  In July of 2016, Dr. Mahmood completed a certification for Plaintiff in support of Plaintiff's application for a loan discharge (Doc. 363).  In this form, Dr. Mahmood indicated that Plaintiff had no limitations in sitting, standing, walking, or lifting, marked limitations in activities of daily living due to severe anxiety and panic attacks, limited residual functionality, and a global assessment function ("GAF") score of 50 (Tr. 363).  Admittedly, the ALJ did not discuss this form, which was in the "E" section of the transcript (Tr. 363), not the "F" section where medical records are exhibited.  Plaintiff contends that since the ALJ must accord substantial weight or considerable weight to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause is shown to the contrary, remand is warranted.  *Bloodsworth*, 703 F.2d at 1240.

The ALJ's failure to consider this questionnaire is harmless error since the findings in the questionnaire are consistent with the ALJ's mental RFC determination (Tr. 24, 363).  Dr. Mahmood's opinion that Plaintiff's residual functionality was "limited" is consistent with the RFC finding, which includes extensive limitations (Tr. 24, 363).  These limitations include only completing simple, repetitive, and routine tasks, only occasionally interacting with other people, only occasionally dealing with workplace setting changes, making only simple decisions, and maintaining attention, concentration, persistence or pace in only two-hour increments (Tr. 24).  Moreover, the ALJ's failure to discuss the GAF

score is harmless because although GAF scores may be helpful in formulating an RFC, they are not essential to the RFC's accuracy. *See Thornton v. Comm'r Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015) (citing *Howard v. Comm'r of Sec. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

Regarding Dr. Mahmood's statement that Plaintiff had marked limitations in activities of daily living (Tr. 363), although this statement was not discussed by the ALJ, the ALJ thoroughly considered Dr. Mahmood's treatment records which show largely intact mental functioning (Tr. 28-29, 543-70).  The ALJ also relied on Dr. Cools' September 2016 opinion, which took into considered Dr. Mahmood's observations (Tr. 28-29, 129, 146-47).  Dr. Cools reviewed Dr. Mahmood's April 2016 psychiatry notes, which included a long narrative regarding Plaintiff's symptoms and his observations of hypervigilance, negative ruminations, suspicious thinking, grossly normal cognition, and fair insight and judgment, and opined only moderate limitations in activities of daily living (Tr. 141).  The ALJ also considered and discounted Dr. Ellis's opinion, and Dr. Ellis said he considered the loan program correspondence in opining that Plaintiff could not perform even low-stress work (Tr. 714, 718).  Therefore, since the ALJ considered Dr. Mahmood's treatment records and considered the opinions of two other doctors that either considered Dr. Mahmood's treatment records and/or considered the loan program correspondence, such error is harmless.

Finally, Plaintiff contends that in presenting a hypothetical to the VE, the ALJ failed to include all of Plaintiff's limitations.  Plaintiff states that the Agency

doctors found that Plaintiff had moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday or week without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 146). The Agency doctors also limited Plaintiff to only one or two step activities (Tr. 147). However, the ALJ accounted for these limitations in the RFC and in the hypothetical to the VE by stating that Plaintiff can only maintain attention, concentration, persistence, or pace in two-hour increments throughout an eight-hour workday with normal breaks (Tr. 24, 81-82). The ALJ also accounted for Plaintiff's one or two step activity limitation by limiting Plaintiff to "simple, repetitive, and routine tasks" (Tr. 24, 81-82, 146-47). Therefore, substantial evidence supports the ALJ's mental RFC finding (Tr. 24, 129, 146).

### 4. Plaintiff's subjective symptoms

Plaintiff contends that the ALJ erred in assessing Plaintiff's subjective symptoms. "[W]hen evaluating a claimant's subjective symptoms, the ALJ *must* consider evidence of the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to "[W]hen evaluating a claimant's subjective symptoms, the ALJ *must* consider evidence of the

following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief ... of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Comm'r of Soc. Sec. Admin.*, 377 Fed.Appx. 944, 947 (11th Cir. 2010) (emphasis added) (quoting 20 C.F.R. § 404.1529(c)(3)).  However, the Commissioner correctly states that "[an] ALJ does not have to cite to particular phrases or formulations, but broad findings that a claimant was not credible, alone, are insufficient for the court to conclude that the ALJ considered the claimant's medical condition as a whole" (Doc. 22 at Pg. 42); *See Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 832 (11th Cir. 2013) (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (quoting *Foote*, 67 F.3d at 1562); *see also Moore*, 405 F.3d at 1212 ("We recognize that credibility determinations are the province of the ALJ").

First, Plaintiff argues that the ALJ's statement that Plaintiff and his wife's testimony and statements are so extreme that they appear implausible "appears to be an attack on [Plaintiff's] character" (Doc. 22 at Pg. 40).  This is in regards to Plaintiff's allegation that he cannot perform normal daily activities of living and that

his wife does everything for him (Tr. 30).  As articulated by the ALJ in her decision, the objective medical evidence of record is in stark contrast to Plaintiff's allegation (Tr. 30).  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence.  The trier of fact has the duty to resolve that conflict").  The ALJ articulated her findings and highlighted the discrepancy between Plaintiff's statement that his wife does everything for him and Plaintiff's refusal to get surgery for his hands and repeated decision to proceed merely with conservative treatment (Tr. 30).  Therefore, Plaintiff's argument is unpersuasive.

Moreover, while Plaintiff is correct in stating that the ALJ must consider reasons for a claimant's failure to seek treatment, Plaintiff's reasons were merely because he did not trust doctors (Tr. 69-71).  As stated, Plaintiff expressed concern that a doctor performing carpal tunnel or cubital tunnel surgery would not present qualifications or evidence of any successful surgeries that they have done (Tr. 71).  Plaintiff also expressed concern that a doctor couldn't offer a warranty like when purchasing a tangible product (Tr. 71).  Regardless of his reasons not to seek surgery, the Plaintiff fails to offer a plausible explanation for his failure to follow the more conservative treatment of regularly wearing the proscribed carpal tunnel braces.

Lastly, Plaintiff argues that the ALJ's analysis fails to fully address the factors in 20 C.F.R. § 404.1529(c)(3) and rather, focuses primarily on objective factors in contrast to the Rules and Regulations.  However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every decision.  *See Mitchell v.*

*Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (explaining that an ALJ's decision need only be explicit enough to enable a reviewing court to determine the reasoning behind findings).  For these reasons, substantial evidence supports the ALJ's decision.

### IV.

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is AFFIRMED.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 29th day of March, 2021.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record